# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

EDWARD J. DANIAL      :

v.      :      Civil No. CCB-17-959

MORGAN STATE UNIVERSITY      :

## MEMORANDUM

Plaintiff Edward J. Danial brought this suit against his employer, Morgan State University, alleging discrimination on the basis of race and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and breach of contract. The defendant has moved to dismiss five of the eight claims brought by Mr. Danial. Mr. Danial has filed a motion to file a surreply. The issues in this case have been fully briefed, and no hearing is necessary. See Local R. 105.6. For the reasons stated below, the motion to dismiss will be granted and the motion to file a surreply will be denied.

## BACKGROUND[1]

Mr. Danial identifies as white, and was employed as a contractual math professor by Morgan State University ("MSU"), a historically black institution, for twenty years. (Compl. Ex. 2 at 1.) For much of that time, his contract was renewed automatically without requiring reapplication. (*Id.*) Mr. Danial's claims relate to a series of incidents that occurred over the course of his more recent employment.

Mr. Danial alleges that the then-department chair, Dr. Earl Barnes, asked him to teach an

---

[1] The following facts are alleged in the complaint and supporting documents, unless stated otherwise. (*See* Compl., ECF No. 1 and Compl. Ex. 2, The Facts of My Cases, ECF No. 1-3.)

1

additional course in Spring 2010. (*Id.* at 13.) This request allegedly was made in December 2009, shortly before the start of the semester. Mr. Danial did not sign a contract regarding this course, but believed he would be paid $5,600 for teaching it. (*Id.*) On March 16, 2010, after the semester had begun, he was offered a contract with $3,300 in payment for one graduate course he was teaching. (*Id.* at 13-14.) He refused the offer, arguing that "the graduate course in the past always counted as two undergraduate courses; and hence I should be paid" $5,600. (*Id.* at 14.) Mr. Danial never reached an agreement regarding payment for this course, so he never signed a contract regarding payment. (*Id.* at 13-14.)

In April 2013, MSU advertised tenure-track positions. Mr. Danial submitted an application for a tenure-track position on October 28, 2013. He was not selected. A faculty member Mr. Danial identifies as African American was selected for a tenure-track position, although Mr. Danial claims she had less experience than he did and did not make "much contribution to the department." (*Id.* at 12.)

Also in Fall 2013, Dr. Alvin Kennedy, the new Dean of the School of Computer, Mathematical, and Natural Sciences, announced that faculty would be required to reapply for their positions at the expiration of their current one-year contracts. (*Id.*) This announcement was repeated by Dr. Asamoah Nkwanta, the Chair of the Mathematics Department. (*Id* at 2.)

At the end of the Fall 2013 semester, Dr. Nkwanta announced to six of the twenty-one math faculty members, including Mr. Danial, that their contracts might be cancelled for the Spring 2014 semester. One of the six was black. Only one of the six, a white faculty member, actually had his contract cancelled for the Spring 2014 semester. Allegedly, black faculty with less experience were not notified that their contracts might be cancelled, nor were their contracts

2

actually cancelled. (*Id.*)

On April 21, 2014, Mr. Danial submitted an application to be the Director of the Actuarial Science Program. He claims that he "buil[t the] actuarial science major and minor" and "built much of the courses to those programs." (*Id.* at 13.) Also in Spring 2014, faculty were told to submit their resumes to reapply for their positions for Fall 2014. Mr. Danial submitted his resume with supporting documentation on April 25, 2014. (*Id.* at 3.) His application was rejected on July 25, 2014. Mr. Danial alleges that similarly situated faculty had their contracts renewed. He requested a reason for his rejection from Dr. Nkwanta, but says none was given. He was allegedly offered a part-time lecturer position and told to return on August 4, 2014 to finalize his courses as a part-time lecturer. (*Id.*)

On July 29, 2014, Mr. Danial met with Dean Kennedy and requested a reason for his rejection. (*Id.* at 4.) Mr. Kennedy said he did not meet the department's current needs, which Mr. Danial contested. At this meeting, Mr. Danial allegedly informed Dean Kennedy that he believed the notification of the possibility of contract cancellation made to 5 white and 1 black faculty members in Fall 2013 was discrimination. (*Id.*) The same day, Mr. Danial met with Tanyka Barber, the MSU Equal Employment Opportunity Office Coordinator ("EEO Coordinator"), and raised his concerns regarding discrimination in his application's rejection and the Fall 2013 notices. (*Id.*)

On August 4, 2014, Mr. Danial met with Dr. Nkwanta, who refused to hire him for a part-time position. (*Id.* at 8-9.) Mr. Danial contacted Ms. Barber and claimed this denial was in retaliation for his allegation of discrimination. He then filed a form and supporting documentation outlining his discrimination allegations with Ms. Barber on August 6, 2014. (*Id.*)

3

Later in August 2014, Mr. Danial learned more about two new faculty hires in the math department. He identifies these individuals as black and claims they have less experience than he does. (Compl. Ex. 2 at 5-6.) In Fall 2014, Dr. Traci Allotey, whom Mr. Danial also identifies as black, was hired for the Director of Actuarial Science position.

Mr. Danial continued to discuss his complaint with Ms. Barber into January 2015. (*See* Suppl. Ex.BXI, ECF No. 47-3. (emails exchanged between Mr. Danial and Ms. Barber during January 2015).) He filed a charge of discrimination with the Maryland Commission on Civil Rights regarding the alleged hiring discrimination and retaliation on February 4, 2015. (*Id.* at 6; Compl. Ex. 4, Copies of the EEOC/MCCR Charges at 2-3, ECF No. 1-5.) Mr. Danial claims that "the MSU EEO office did not provide any written procedure to conduct a discrimination complaint" and that he discussed the lack of procedures with Ms. Barber and her supervisor, Amanda Grant, on February 4, 2015. (*Id.* at 10.) He claims to have filed charges relating to the lack of written guidelines on February 10, 2015, relating to the denial of promotion to Director of the Actuarial Science Program on February 19, 2015, and regarding the denial of his tenure-track application on February 25, 2015. (*Id.*)[2] In late March 2015, Mr. Danial located discrimination guidelines on the MSU website. *(Id.* at 10.)

Mr. Danial alleges in his complaint that Ms. Barber never responded to his hiring complaint, and that he complained to Ms. Grant about this on February 4, 2015. (*Id.* at 11.) He states that Ms. Barber "repeatedly avoided addressing my complaint, over 3 periods by now, by repeated lies and avoiding me face-to-face in any mediation meetings at MCCR." (*Id.* at 12.) He has acknowledged in later filings in this case, however, that the claim was investigated. (*Compare id.* at 9 with Am. Suppl. Resp. Opp. Mot. D at 25, ECF No. 48.)

---

[2] Copies of these charges have not been filed in this suit.

4

Mr. Danial had also been employed by the CASA Program in the summers. On March 18, 2015, Mr. Danial asked the director of the program to consider him for Summer 2015 employment with the CASA Program. (Compl. Ex. 2 at 15.) On May 20, 2015, his request was denied. (*Id.*) When asked for a reason, he was told enrollment was too low. On the same phone call he learned that the program had recently hired a less-credentialed individual whom Mr. Danial identifies as black. On May 26, 2015, Mr. Danial contacted the program director's supervisor and alleged racial discrimination in their decision not to hire him. (*Id.*) On July 8, 2015, Mr. Danial again contacted the program director and her supervisor claiming that another "black faculty with far less teaching experience and academic credentials, namely Ms. Renu Ahuja (black from Indian origin)" had been hired over him. (*Id.* at 16.) He received no response. Mr. Danial believes he was not hired for the CASA program in retaliation for his discrimination claims regarding the Math department. (*Id.*) On July 18, 2015, Mr. Danial filed a formal charge of discrimination regarding the CASA program with the MCCR. (*Id.* at 16; Compl. Ex. 4 at 4-5.)

Mr. Danial also applied for positions with the Math Department in Fall 2015 and Fall 2016 and was denied. (Compl. Ex. 2 at 8.) He applied to the CASA Program again in 2016 and 2017 and was also denied. (*Id.* at 16.) On January 4, 2017 and January 18, 2017, the Equal Employment Opportunity Commission issued notices of right to sue regarding the Math Department hiring discrimination claim and the CASA Program discrimination claim, respectively.

On April 6, 2017, Mr. Danial filed suit against Morgan State University and the MSU president, David Wilson, in this court. (Compl., ECF No. 1). He alleges discrimination in violation of Title VII, breach of contract, and violation of his freedom of speech. Specifically, his

eight claims are: "(1) Discrimination in Hiring; (2) Retaliation for Charging Discrimination; (3) Lack of Written Guidelines for Investigating Discrimination Claims; (4) Failure to Address a Discrimination Complaint; (5) Discrimination in Failing to Convert Him to Tenure Track; (6) Discrimination in Failing to Promote Him to Director of the Actuarial Science Program; (7) Breach of Contract For Failure to Pay an Amount of $5,600.00; and (8) Discrimination and Retaliation in Failing to Hire Him for the CASA Program." (Memo. Supp. Mot. D. at 1-2; *see generally* Compl. Ex. 2.)[3] On December 21, 2017, MSU filed a motion to dismiss, or, in the alternative for summary judgment as to claims 3, 4, 5, 6, and 7.[4] (ECF No. 34.) Mr. Danial filed his opposition on January 8, 2018 (ECF No. 42), filed additional supplemental material on January 22, 2018 (ECF No. 47), and filed an amended supplement on January 23, 2018 (ECF No. 48).[5] MSU filed its reply on February 5, 2018. (ECF No. 49.) Mr. Danial filed a motion for leave to file a surreply on February 13, 2018. (ECF No. 51.)

## ANALYSIS

### I. Motion to File a Surreply

Mr. Danial filed a motion for leave to file a surreply on February 13, 2018, arguing that Morgan State University raised new arguments in its reply brief. (Mot. File Surreply, ECF No. 51.) The local rules state that "Unless otherwise ordered by the Court, surreply memoranda are not permitted to be filed." Local R. 105.2(a). Mr. Danial does not identify what new arguments were raised in the defendant's reply to which he wishes to respond, nor can the court identify any

---

[3] Mr. Danial agreed to defendant's description of his claims in his Response to the Motion to Dismiss. (*See* Resp. Opp. Mot. D. at 1, ECF No. 42-1.)
[4] Although this motion was filed only on behalf of MSU, the supporting memorandum argues that claims were improperly asserted against President Wilson.
[5] Because Mr. Danial's supplements appear to be edited and expanded versions of his initial response, this memorandum cites only to the amended supplement.

6

new arguments raised for the first time in Morgan State University's reply brief. The issues have been adequately briefed in the other filings by both parties. Accordingly, Mr. Danial's motion will be denied.

## II. University President David Wilson

Mr. Danial has not properly asserted claims against President Wilson. Supervisors are not liable in their individual capacities for Title VII violations. *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180 (4th Cir. 1998). All discrimination claims will be construed as solely against Morgan State University. To the extent Mr. Danial is suing for actions President Wilson may have taken as an agent of Morgan State University, those actions are covered by his claims against the university. *See* 42 U.S.C.A. § 2000e(b) (defining "employer" to include "a person engaged in an industry affecting commerce...and *any agent of such a person*") (emphasis added).

Mr. Danial also alleges that his claims against President Wilson are also freedom of speech and breach of contract claims. Where, as here, the plaintiff is self-represented, his pleadings are "to be liberally construed" and are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, even a pro se litigant's complaint must be dismissed if it does not allege a "plausible claim for relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The complaint does not allege any specific facts related to any freedom of speech claims, so none of the eight identified claims can be construed as such.

To the extent Mr. Danial's breach of contract claim includes President Wilson, that claim will be dismissed under Eleventh Amendment immunity, as discussed below.

### III. Summary Judgment

#### a. Standard

Where the parties present matters outside of the pleadings and the court considers those matters, as here, the motion is treated as one for summary judgment. *See* Fed. R. Civ. P. 12(d); *Gadsby by Gadsby v. Grasmick*, 109 F.3d 940, 949 (4th Cir. 1997); *Paukstis v. Kenwood Golf & Country Club, Inc.*, 241 F. Supp. 2d 551, 556 (D. Md. 2003). "There are two requirements for a proper Rule 12(d) conversion." *Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*, 721 F.3d 264, 281 (4th Cir. 2013). First, all parties must "be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment," which can be satisfied when a party is "aware that material outside the pleadings is before the court." *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985); see also *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (commenting that a court has no obligation "to notify parties of the obvious"). "[T]he second requirement for proper conversion of a Rule 12(b)(6) motion is that the parties first 'be afforded a reasonable opportunity for discovery.'" *Greater Baltimore*, 721 F.3d at 281.

The plaintiff had adequate notice that the defendant's motion might be treated as one for summary judgment. The motion's alternative caption and attached materials are in themselves sufficient indicia. *See Laughlin*, 149 F.3d at 260 61. Moreover, the plaintiff referred to the motion in his opposition brief as one for summary judgment and submitted additional documentary exhibits. Rule 56(d) affords plaintiffs the opportunity to seek further discovery through an affidavit. *See* Fed. R. Civ. P. 56(d); see also *Greater Baltimore*, 721 F.3d 264, 281 ("[The defendant] took 'the proper course' when it filed the Rule 56([d]) Affidavit, 'stating that

8

it could not properly oppose . . . summary judgment without a chance to conduct discovery.'") (citation omitted); *Laughlin*, 149 F.3d at 261 (refusing to overturn district court's grant of summary judgment on assertions of inadequate discovery when the nonmoving party failed to make an appropriate motion under Rule 56([d])). The court will consider the affidavits and additional materials submitted by the parties and will treat the motion of the defendant as a motion for summary judgment.

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 48 (1986) (emphasis in original). Whether a fact is material depends upon the substantive law. See id.

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion,'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration in original) (quoting *United States v. Diebold*, 369 U.S. 654, 655 (1962)), but the

court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778 79 (4th Cir. 1993) (internal quotation marks omitted).

### b. Claims 3 and 4 – Lack of Written Guidelines and Failure to Address Complaint

Title VII makes it illegal for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). In order to state a prima facie claim of discrimination under Title VII, a plaintiff must plausibly allege: "(1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). "An adverse employment action is a discriminatory act that adversely affects the terms, conditions, or benefits of the plaintiff's employment." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007). "[A]n employer's failure to investigate a complaint of discrimination is generally not considered a materially adverse action." *Mason v. Montgomery County Police Dept.*, 2013 WL 6585928, *5 (D.Md. Dec. 13, 2013) (citing *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 640-41 (10th Cir. 2010); *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010)).[6]

By Mr. Danial's own admission, neither claim 3 nor claim 4 are viable. Mr. Danial admits in his complaint, response, and the supplemental filing that he found guidelines for handling discrimination complaints on the Morgan State University website (Compl. Ex. 2 at 10;

---

[6] Unreported cases are cited not for their precedential value, but for the soundness of their reasoning.

10

Resp. at 16, ECF No. 42-1; Am. Suppl. Resp. Opp. Mot. D at 22). He also admits that "The 'failure to investigate' phrase is no longer accurate for this case.... Defendant did investigate the discrimination Complaint presented to the EEO office on August 6, 2014." (Am. Suppl. Resp. Opp. Mot. D at 25.) Given these admissions, there is no question that these claims are no longer viable, and summary judgment must be granted.

Mr. Danial argues in his supplemental filing that the guidelines were not followed, and that Claim 4 should be construed as "intentionally failing to deliver the findings of the investigation of Complaint." (*Id.* at 22, 25.) Mr. Danial has not moved to amend his complaint to reflect these new claims. Even if he did, neither represents an adverse employment action within the meaning of Title VII, as allegedly failing to follow investigation guidelines and failing to deliver the investigation's findings to Mr. Danial do not affect the terms, conditions, or benefits of Mr. Danial's employment. Nor does either of the original claims represent an adverse employment action. The harms Mr. Danial identifies as stemming from the investigation into his complaints are harms that would stem from the alleged discrimination itself, not the investigation independently. Mr. Danial's assertions of collusion and conspiracy throughout his investigation are not sufficient to sustain these claims.

### c. Claims 5 and 6 – Discrimination in Denial of Tenure Track and Promotion

Morgan State University argues that claims 5 and 6 must be dismissed because Mr. Danial failed to exhaust his administrative remedies regarding these claims. Unlike motions to dismiss for failure to state a claim upon which relief can be granted, "[m]otions to dismiss for failure to exhaust administrative remedies are governed by Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction." *Khoury v. Meserve*, 268 F.Supp.2d 600, 606 (D. Md. 2003).

11

Accordingly, the defendant's motion will be treated as a motion to dismiss for lack of subject matter jurisdiction. *See* Fed.R.Civ.P. 12(b)(1); *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) (explaining that "a failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim"). A motion pursuant to Rule 12(b)(1) should be granted "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (internal quotation marks and citation omitted). The plaintiff bears the burden of proving that subject matter jurisdiction exists. *Id.* When considering a Rule 12(b)(1) motion, the court should "regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans*, 166 F.3d at 647 (internal quotation marks and citation omitted).

A plaintiff's right to bring suit under Title VII is limited by the charge of discrimination he filed with the EEOC. *See Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996). Private letters and other communications to investigators are not viewed as constructively amending the formal charges, as doing so would fail to "put the charged party on notice of the claims raised against it." *Balas v. Huntington Ingalls Industries, Inc.*, 711 F.3d 401, 408 (4th Cir. 2013) (quoting *Sloop v. Mem'l Mission Hosp., Inc.*, 198 F.3d 147, 149 (4th Cir. 1999).

Mr. Danial did not raise claims 5 and 6 in his initial charge. There are two complaints filed with the Maryland Commission on Civil Rights ("MCCR") for which the EEOC issued right to sue letters. The first was filed on February 4, 2015, and alleges discrimination in the Math department's decision not to renew Mr. Danial's contract. (Compl. Ex. 4 at 2-3.) The second was filed on July 18, 2015, and alleges discrimination in connection with Mr. Danial not being hired for the CASA Summer Program. (*Id.* at 4-5.) Mr. Danial has submitted the right to sue letters regarding each of these charges. (*See* Compl. Ex. 3, Notices of the Right to Sue Letters, ECF No. 1-4.)[7] Neither of these charges contains any information related to the denial of Mr. Danial's application for tenure track nor the denial of a promotion to the director of actuarial science program. In Mr. Danial's complaint, he alleges that he filed charges relating to the tenure track application and promotion denial with the MCCR on February 25, 2015, and February 19, 2015, respectively. He has not, however, produced any evidence of these charges, nor right to sue letters from the EEOC regarding them.

In his response, Mr. Danial argues that he orally filed charges on December 22, 2014. He also submitted a series of emails between himself and Ms. Barber, the EEO Coordinator, that were exchanged in January 2015, prior to the filing of both MCCR charges. (Suppl. Ex.BXI.) He also describes voluminous filings he submitted in support of all of his charges. Although Mr. Danial discussed many allegations of discrimination in these emails, and may have submitted many documents in support of his allegations, only the actual charges filed may be considered in determining the scope of his complaint. *See Balas*, 711 F.3d at 408.

That these two claims are outside the scope of Mr. Danial's complaint and were not

---

[7] As to those two charges, the MCCR found no probable cause to believe discrimination or retaliation occurred. (Resp. Ex. 1, February 22, 2016 Written Findings at 15, ECF No. 34-2; Resp. Ex. 2, May 18, 2016 Written Findings at 10, ECF No. 34-3.)

developed by reasonable investigation of the original complaint is further confirmed by the Written Findings issued by MCCR, neither of which discuss the denials of tenure track nor promotion. (*See generally* Resp. Ex. 1, February 22, 2016 Written Findings; Resp. Ex. 2, May 18, 2016 Written Findings.) The burden is on Mr. Danial to demonstrate that subject matter jurisdiction exists. He has not met this burden regarding claims 5 and 6, so they must be dismissed.

### d. Claim 7 – Breach of Contract

Morgan State University argues that sovereign immunity bars Mr. Danial's breach of contract claim. The Eleventh Amendment establishes that states may not be sued by private individuals in federal court except in two situations: after consent by the state, or under an abrogation of state sovereign immunity by Congress acting pursuant to a valid exercise of its power. *College Savings Bank v. Florida Prepaid*, 527 U.S. 666, 670 (1999). Additionally, "[s]uits against state officials in their official capacity [] should be treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). Maryland has waived its sovereign immunity regarding contract suits only as to "a contract action, in a court of the State, based on a written contract that an official or employee executed for the State or one of its units while the official or employee was acting within the scope of the authority of the official or employee." Md. Code Ann., State Gov't § 12-201. Implied contracts do not fall within the scope of this waiver of sovereign immunity. *Mass Transit Admin. v. Granite Const. Co.*, 57 Md. App. 766, 780 (1984). Morgan State University is an "independent unit of State government." Md. Code Ann. Educ. § 14-101(a)(3), and is thus entitled to sovereign immunity and subject to actions under the contract waiver.

14

Mr. Danial's breach of contract suit does not fall within the limited scope of the waiver of sovereign immunity related to contract actions for two reasons. First, he has not brought his suit in state court. Second, there is no written contract that has been breached. Mr. Danial argues that he refused to sign the written contract offered because the pay rate was not what he was orally promised. Unfortunately, this means there was no contract executed on which to bring suit. Mr. Danial admits as much in his response, stating "The proper contract of 5,600 $was [sic] given to Plaintiff only verbally…In other words, the proper written contract of 5,600$ [sic] never existed to sign on in the first place." (Am. Suppl. Resp. Opp. Mot. D at 32.) Thus, Mr. Danial's breach of contract claim does not fall within the limited waiver of sovereign immunity, and Morgan State University is entitled to Eleventh Amendment immunity as to the breach of contract claim.

To the extent Mr. Danial intends this claim to be filed under Title VII, it fails for the same reasons as Claims 5 and 6: it was not alleged in either of the initial charges for which Mr. Danial was issued notice of right to sue letters. Claim 7 will be dismissed.

## CONCLUSION

For the reasons stated above, summary judgment or dismissal will be granted as to claims 3, 4, 5, 6, and 7. Mr. Danial's motion to file a surreply will be denied. Claims 1, 2, and 8 will be permitted to proceed.

A separate order follows.

7/27/18
Date

Catherine C. Blake
United States District Judge