# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| EDWARD J. DANIAL | * |
| Plaintiff, | * |
| v. | * Civil No. CCB-17-959 |
| MORGAN STATE UNIVERSITY | * |
| Defendant. | * |

## MEMORANDUM

Plaintiff Edward J. Danial brought this suit against his former employer, Morgan State University ("MSU"), alleging discrimination on the basis of race and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). Pending before the court are Danial's motion for summary judgment and MSU's cross motion for summary judgment. For the reasons explained below, the court will grant MSU's motion and deny Danial's motion.

## FACTUAL AND PROCEDURAL HISTORY[1]

Danial, who identifies as Caucasian, was employed as a contractual math professor at MSU, a historically African American institution, from 1994 to 2014. Each year, Danial entered into a one-year contract with MSU, with the understanding that MSU had no obligation to rehire him after the expiration of the contract. During this period, Danial also entered into several six-week contracts to teach at MSU's summer supplemental academic program, the Center for Academic Success and Achievement Academy (the "CASA program").

---

[1] The parties have a lengthy history. Given the extensive record in this case, the court will recite only the necessary minimum facts here. Additionally, Danial disputes a large portion of MSU's recitation of facts. The court has done its best to recite only uncontested facts and note when a fact is disputed.

1

On August 6, 2013, MSU implemented a policy aimed at converting certain contractual faculty positions to tenure-track faculty positions. In Fall 2013, Alvin Kennedy, the Dean of the School of Computer, Mathematical, and Natural Sciences, announced that contractual faculty would be required to reapply for their positions at the expiration of their current one-year contracts.[2] In Spring 2014, Asamoah Nkwanta, the Chair of the Mathematics Department, requested that all contractual faculty members submit a *curriculum vitae* ("CV") so they could be considered for tenure-track positions and future contractual positions.

In 2014, Nkwanta directed a Promotion and Tenure Committee (the "P&T Committee") tasked with reviewing the CVs of applicants for tenure-track and contractual positions. The P&T Committee consisted of three tenured professors in the Mathematics Department: Alexander Pankov, Leon Woodson, and Xuming Xie. The pool of applicants included the Mathematics Department's contractual faculty members, as well as several external candidates. The P&T Committee evaluated candidates based on their teaching, service to the Mathematics Department in the past year, and research record.[3]

On May 21, 2014, the P&T Committee created a report in which they categorized candidates in the "Top group," "Second group," or "Third group." (P&T Report I, Def.'s Opp. & Cross Mot. Ex. 8, ECF No. 68-8). Danial was placed in the "Third group," (*id.*), which

---

[2] At the end of the Fall 2013 semester, the Chair of the Mathematics Department, Asamoah Nkwanta, informed six of the department's twenty-one contractual faculty members, including Danial, that their contracts might be cancelled for the Spring 2014 semester. One of the six was African American. Only one of the six, a Caucasian faculty member, actually had his contract cancelled for the Spring 2014 semester.

[3] Danial claims that "Chair Nkwanta's . . . testimony that he directed the Committee to rank applicant's [sic] based on teaching, service, and research record, via their CV's is false." (Pl.'s Reply & Opp. at 8, ECF No. 74). This allegation is groundless. P&T Committee members Xie and Pankov submitted affidavits stating that they ranked applicants on their teaching, service, and research records, (Xie Aff. ¶ 3, Def.'s Opp. & Cross Mot. Ex. 6, ECF No. 68-6; Pankov Aff. ¶ 3, Def.'s Opp. & Cross Mot. Ex. 4, ECF No. 68-5), and P&T Committee member Woodson stated in his deposition that service was a "big part" of the ranking criteria, (Woodson Depo. at 35:2–12, Def.'s Opp. & Cross Mot. Ex. 10, ECF No. 68-10).

2

represented the five least qualified candidates. (Xie Aff. ¶ 5, Def.'s Opp. & Cross Mot. Ex. 6, ECF No. 68-6; Pankov Aff. ¶ 5, Def.'s Opp. & Cross Mot. Ex. 4, ECF No. 68-5; Nkwanta Aff. ¶ 11, Def.'s Opp. & Cross Mot. Ex. 2, ECF No. 68-3).[4] According to P&T Committee members Xie and Pankov, Danial's CV did not reflect any service to the Mathematics Department in the relevant timeframe.[5] (Xie Aff. ¶ 8; Pankov Aff. ¶ 8). Additionally, Danial's CV showed that he had not published a research paper since 1992. (Danial CV, Def.'s Opp. & Cross Mot. Ex. 7, ECF No. 68-7). On June 25, 2014, the P&T Committee created a second report to include three additional applicants. (P&T Report II, Def.'s Opp. & Cross Mot. Ex. 9, ECF No. 68-9). Danial again appeared in the lowest-ranked group. (*Id.*).

Following the P&T Committee's evaluation, MSU extended several offers for contractual faculty positions for the 2014–15 academic year. Several offers were extended to, and accepted by, applicants who identified as Caucasian. (Guven Yilmaz Aff. ¶¶ 2, 7, Def.'s Opp. & Cross Mot. Ex. 13, ECF No. 68-13; Nadia Enurah Aff. ¶ 6, Def.'s Opp. & Cross Mot. Ex. 18, ECF No. 68-18; Nkwanta Aff. ¶¶ 22–23). On July 25, 2014, Nkwanta told Danial that he would not be receiving an offer, but the possibility of a part-time position was discussed.

On July 29, 2014, Danial met with Dean Kennedy and alleged that Nkwanta discriminated against him on the basis of race by refusing to offer him a contractual position. Kennedy referred Danial to MSU's internal Equal Employment Opportunity Office ("EEOO"), where Danial met with EEOO Director Tanyka Barber. Danial again met with Nkwanta on

---

[4] Danial claims that the P&T Report "is fraudulent, made by Chair Nkwanta, and hence racially motivated." (Pl.'s Reply & Opp. at 9, ECF No. 74). To support this claim, Danial points to minor inconsistencies in the P&T Committee members' recollections about the duration and location of a meeting on May 21, 2014. As will become clear in this Memorandum, the court does not consider this to be a genuine dispute of material fact.
[5] Danial contends the characterization of his service record is "maliciously false" and references multiple exhibits purporting to demonstrate his service to the Mathematics Department. (Pl.'s Reply & Opp. at 13, ECF No. 74). The P&T Committee, however, based their rankings on applicants' CVs. Upon review of Danial's CV, the court finds that it did not reflect recent service to the Mathematics Department.

3

August 4, 2014; during this meeting, Nkwanta informed Danial that he would not receive an offer for a part-time position. At some point between Danial's July 29 meeting with Dean Kennedy and the August 4 meeting, Nkwanta spoke with Dean Kennedy about Danial's allegation of racial discrimination. (Nkwanta Memo. to Tanyka Barber, Pl.'s Mot. Ex. E9, ECF No. 67-9). On August 6, 2014, Danial submitted a discrimination claim to the EEOO based on MSU's failure to offer him a contractual position.

Several months later, Danial applied for a contract to teach in the CASA program for Summer 2015. On May 20, 2015, the director of the CASA program, Brenda James, informed Danial that he would not receive the contract. Of the fifteen teachers James hired for the Summer 2015 CASA program, five were Caucasian. Danial again applied for contracts to teach in the CASA program in 2016 and 2017 but was rejected both times.[6]

Danial again applied for contractual positions in MSU's Mathematics Department for academic years 2015–16 and 2016–17. He was rejected both times.[7]

In 2015, Danial filed discrimination claims with the Maryland Commission on Civil Rights ("MCCR") and the United States Equal Employment Opportunity Commission ("EEOC"), alleging racial discrimination and retaliation. The MCCR released written findings on February 22, 2016, and May 18, 2016, concluding that there was no probable cause to believe that MSU discriminated or retaliated against Danial. (Feb. 22, 2016, MCCR Written Finding,

---

[6] Danial also states in his motion for summary judgment that he applied for, and was rejected from, contracts with the CASA program for Summers 2018 and 2019. In his complaint, however, Danial only discusses MSU's failure to hire him for Summers 2015–17. (Compl. Ex. 1, ECF No. 1-3). Accordingly, the court will only address Danial's claims regarding Summers 2015–17.

[7] Danial also states in his motion for summary judgment that he applied for, and was rejected from, contractual positions in the Mathematics Department for the 2017–18 and 2018–19 academic years. These allegations do not appear in his complaint. (Compl. Ex. 1, ECF No. 1-3). The court will address only Danial's claims regarding academic years 2015–16 and 2016–17.

4

Def.'s Opp. & Cross Mot. Ex. 22, ECF No. 68-22; May 18, 2016, MCCR Written Finding, Def.'s Opp. & Cross Mot. Ex. 23, ECF No. 68-23). The EEOC issued right to sue letters in January 2017. On April 6, 2017, Danial filed suit against MSU in this court.[8] Upon MSU's motion, the court dismissed five of Danial's eight claims on July 27, 2018. (Memorandum Opinion, ECF No. 54; Order, ECF No. 55). Danial's three remaining claims are brought under Title VII of the Civil Rights Act of 1964. In Count I, Danial alleges discriminatory failure to hire for contractual positions for the 2014–15, 2015–16, and 2016–17 academic years. In Count II, he alleges retaliation with respect to his non-hiring for positions in the Mathematics Department. In Count VIII, he alleges discrimination and retaliation with respect to his non-hiring for the CASA program.

Danial filed a motion for summary judgment, (Pl.'s Mot., ECF No. 67), and MSU filed a cross motion for summary judgment, (Def.'s Opp. & Cross Mot, ECF No. 68). The issues have been fully briefed.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

---

[8] Danial also originally asserted claims against MSU president David Wilson. The court dismissed those claims on July 27, 2018. (Memorandum Opinion, ECF No. 54; Order, ECF No. 55).

(1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48 (emphasis in original). The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

When parties have filed cross-motions for summary judgment, the court must consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Paulone v. City of Frederick*, 787 F. Supp. 2d 360, 368 (D. Md. 2011) (quoting *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)) (internal quotation marks omitted). "Both motions must be denied if the court finds that there is a genuine issue of material fact." *Id.*

## ANALYSIS

### I. Discrimination (Counts I and VIII)

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against an employee on the basis of, *inter alia*, the employee's race. 42 U.S.C. § 2000e-2(a). Absent direct or circumstantial evidence of discrimination, a plaintiff may proceed under the burden-shifting framework first established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 318 (4th Cir.

2005). Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a prima facie case of racial discrimination. *McDonnell*, 411 U.S. at 802. To establish a prima facie case for discriminatory failure to hire, a plaintiff must show that: (1) he belonged to a protected class; (2) he applied for, and was qualified for, a job for which the employer was seeking applicants; (3) he was rejected despite his qualifications; and (4) after his rejection, the position remained open and the employer continued to seek similarly-qualified applicants, or filled the position with an applicant outside the protected class. *McDonnell*, 411 U.S. at 802; *E.E.O.C. v. Sears Roebuck & Co.*, 243 F.3d 846, 851 (4th Cir. 2001).

If a plaintiff establishes a prima facie case for discriminatory failure to hire, "the burden then shifts to the employer to 'produc[e] evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason.'" *Sears Roebuck*, 243 F.3d at 852 (quoting *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). "This burden is one of production, not persuasion; it can involve no credibility assessment." *Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 725 (4th Cir. 2019) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). If the defendant provides a legitimate, non-discriminatory reason for the failure to hire, the burden shifts back to the plaintiff to show that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253.

  A. <u>*Contractual faculty position in the Mathematics Department*</u>

Danial claims that MSU discriminated against him on the basis of his race when it failed to hire him for contractual faculty positions for the 2014–15, 2015–16, and 2016–17 academic

7

years.[9, 10] Despite his claims to the contrary, Danial does not present direct or circumstantial evidence of discrimination.[11] The court, therefore, analyzes his claim within the *McDonnell Douglas* framework.

It is undisputed that Danial satisfies elements (1) and (3) of a prima facie case for discriminatory failure to hire, as he belongs to a protected class and was rejected for a contractual faculty position. MSU, however, contends that Danial cannot meet elements (2) and (4). MSU states that Danial was not qualified for the position, and that after his rejection, MSU offered contractual positions to several Caucasian individuals. However, "[t]he burden of establishing a prima facie case . . . is not onerous." *See Burdine*, 450 U.S. at 253; *see also Westmoreland*, 924 F.3d at 725. Given that Danial worked as a contractual professor in MSU's Mathematics Department for twenty years, and was asked to submit a CV for consideration for the 2014–15 academic year, the court will assume without deciding that he was qualified for the position and can satisfy element (2) of a prima facie case.[12] Although it is a close question, the court will also assume that element (4) is satisfied. MSU claims that Danial cannot show that the position was filled by a person outside his protected class, as MSU offered contractual faculty positions to nine Caucasian teachers (as well as five African American teachers). But Danial

---

[9] The court will not consider Danial's claims that MSU discriminatorily failed to hire him for academic years 2017–18 and 2018–19. *See supra* note 7.

[10] The parties' evidence pertains only to MSU's decision not to hire Danial for a position in the Mathematics Department for the 2014–15 academic year. Danial simply states that MSU's allegedly discriminatory reason for not hiring him for 2015–16 also explains his non-hire in subsequent years but offers no additional evidence. Accordingly, the court will analyze these three episodes together.

[11] Danial claims that he "has offered direct evidence of discrimination" because "[h]e was treated differently than similarly situated African-American faculty members." (Pl.'s Reply & Opp. at 26, ECF No. 74). "Direct evidence must be evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006) (internal citation and quotation marks omitted). Danial does not present any evidence of conduct or statements that directly reflect the anti-Caucasian bias he alleges.

[12] MSU claims that Danial was not qualified for the "revised contract appointments," which placed greater emphasis on service and collegiality. MSU's evidence, however, suggests that service and collegiality were used to *rank* candidates rather than screen candidates out as unqualified.

claims that his *particular* position was filled by Dr. James McCalla, an African American man. Danial's claim is buttressed by Nkwanta's apparent agreement in his deposition with the statement that "Dr. McCalla took [Danial's] position." (Nkwanta Depo. at 30:13–31:21, Pl.'s Mot. Ex. D11, ECF No. 67-10). Considering the low standard for establishing a prima facie case, the court will assume without deciding that Danial can satisfy element (4).

MSU has articulated a non-discriminatory reason for its failure to hire Danial for full-time contractual positions in the Mathematics Department. Specifically, MSU states that Danial was not hired because of his lack of recent service and lack of collegiality. MSU supports this contention with the affidavits of Nkwanta, P&T Committee members Xie and Pankov, and the deposition of P&T Committee member Woodson. MSU also provides the affidavits of several other professors in the Mathematics Department as evidence of Danial's lack of collegiality. (Julian Fuller Aff. ¶¶ 3–6, Def.'s Opp. & Cross Mot. Ex. 11, ECF No. 68-11; Jean-Pierre Liamba Aff. ¶ 5, Def.'s Opp. & Cross Mot. Ex. 12, ECF No. 68-12; Yilmaz Aff. ¶ 6).

Danial cannot meet his burden of showing that MSU's proffered reason for his non-hire is a pretext for discrimination. Danial claims that the P&T Committee evaluation process was "invalid and racially motivated," (Pl.'s Reply & Opp. at 27, ECF No. 74), but provides no evidence to support this claim, other than his belief that Nkwanta and the P&T Committee members are lying.[13] A plaintiff's "own assertions of discrimination . . . in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action." *Adams v. Trustees of the Univ. of N.C.-Wilmington*, 640 F.3d 550,

---

[13] Danial claims that "collegiality" was not a true selection criterion, but was rather "injected" into the pleadings by MSU's counsel. To the extent that Danial is alleging misconduct on the part of MSU's counsel, the court finds no evidence to support this allegation and will not consider it. Moreover, Danial's claim that "collegiality" was "injected" into the case is belied by the deposition of P&T Committee member Woodson, who stated that the P&T Committee looked for applicants who were "[g]etting along with the Department [and] getting along with the fellow people that are there." (Woodson Depo. at 17:19–18:2, ECF No. 68-10).

560 (4th Cir. 2011); *see also Pascual v. Lowe's Home Centers, Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006) (declining to credit a plaintiff's unsubstantiated claim that his supervisor "was dishonest, and therefore, his written warnings are unreliable and should not be considered").[14]

Moreover, much of Danial's argument on pretext actually cuts in MSU's favor. Danial states MSU's explanation for failing to hire him must be false, as his prior contracts required "only teaching duties," not research or service, and that he "does not understand why [other members of the Mathematics Department] [wrote] affidavits about activities that Plaintiff and other faculty are not required to do[.]" (Pl.'s Reply & Opp. at 15–16, ECF No. 74). But this is precisely MSU's point: The P&T Committee looked more favorably upon applicants who, unlike Danial, viewed non-required activities within the Department as integral to their roles as professors. Danial's disagreement with the selection criteria used in hiring does not make MSU's explanation a pretext for discrimination. *See Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 722 (4th Cir. 2013) (plaintiff's disagreement with employer's decision to fire her did not prove that the decision was "dishonest or not the real reason for her termination.") (internal citation and quotation marks omitted).

Danial's claim that his qualifications were superior to those of McCalla, the African American man he believes replaced him, similarly fails to prove pretext. Danial repeatedly states that a comparison of his CV with McCalla's shows that Danial was the more qualified candidate. But Nkwanta states that "I recommended that the University offer Dr. Peter McCalla a contract professor position because the P&T Committee and I believed he had potential to contribute to the growth of the Mathematics Department." (Nkwanta Aff. ¶ 25, ECF No 68-3). Danial's opinion about another applicant's qualifications does not prove that MSU's explanation for

---

[14] Unpublished opinions are cited not for their precedential value but for the soundness of their reasoning.

Danial's non-hire is pretextual. *See, e.g., Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000) (plaintiff's self-assessment that she performed her job well, and her belief that her performance appraisals were inaccurate, was insufficient to prove that her employer's proffered reason for termination was a pretext for discrimination).

In sum, Danial falls considerably short of his burden to prove "*both* that [MSU's] reason [for not hiring him] was false, *and* that discrimination was the real reason." *Adams*, 640 F.3d at 560 (emphasis in original). Danial's subjective belief that he was more qualified than another candidate, coupled with a bald assertion that he was subject to anti-Caucasian bias, is insufficient to prove discrimination.

### B. *CASA program*

Danial claims that MSU discriminated against him on the basis of his race when it failed to hire him as a teacher for the CASA program for Summers 2015, 2016, and 2017.[15] As Danial offers no direct or circumstantial evidence of discrimination, the court will analyze his claim under the *McDonnell Douglas* framework.

Even though the burden of establishing a prima facie case is not heavy, *see Burdine*, 450 U.S. at 253, Danial cannot meet it. Specifically, Danial fails on element (4), as he cannot show that his position at the CASA program was filled by someone outside his protected class. For Summer 2015, CASA Director Brenda James hired five Caucasians to teach in the program, and for Summers 2016 and 2017, she hired four Caucasians. (James Aff. ¶ 13, ECF No. 68-4). Danial offers no evidence that a person of color "replaced" him for a particular position at the CASA program. Instead, Danial merely states that he was more qualified than the African American

---

[15] The court will not consider Danial's claims that MSU discriminatorily failed to hire him for Summers 2018 and 2019. *See supra* note 6.

11

teachers hired.[16]

In the Fourth Circuit, "as a general rule, . . . Title VII plaintiffs must show that they were replaced by someone outside their protected class in order to make out a prima facie case." *Miles v. Dell, Inc.*, 429 F.3d 480, 486 (4th Cir. 2005). While there are exceptions to this general rule, Danial meets none of them.[17] Indeed, the Fourth Circuit has stated that "replacement within the protected class gives rise to an inference of non-discrimination with respect to the protected status." *Id.* at 488. Danial cannot rebut this inference of non-discrimination. In fact, in his deposition, Danial admitted that he did not believe James discriminated against him because of his race: "Let me put it clear. Dr. James is not a racist, and she never discriminated against me . . . . And if she hired me for nine [years], how could I say that she discriminated against me? And most of us [working in the CASA program] were white people." (Danial Depo. at 138:6–15, Def.'s Opp. and Cross Mot. Ex. 1, ECF No. 68-2).[18] Plainly, then, Danial cannot show that MSU's failure to hire him for the CASA program was the result of racial discrimination.

## II. Retaliation (Counts II and VIII)

Title VII also prohibits an employer from retaliating against an employee who has "opposed any practice made an unlawful employment practice" by Title VII. 42 U.S.C.A. §

---

[16] Notably, Danial makes no claims about the relative qualifications of the Caucasians hired to teach in the program.
[17] Recognized exceptions include "cases where (1) an age discrimination plaintiff is replaced by a much younger person within the same class, (2) a significant lapse of time occurs between the adverse employment action and the decision to hire another person, and (3) the employer's hiring of another person within the protected class is calculated to disguise its act of discrimination." *Miles*, 429 F.3d at 486 (citing *Brown v. McLean*, 159 F.3d 898, 905 (4th Cir. 1998)). The Fourth Circuit has not held that exceptions to element (4) of a prima facie case are limited to these three situations, *id.* at 487, but has stated that courts must consider the purpose of element (4) "[i]n order to determine whether an exception . . . is warranted," *id.* at 488. The purpose of element (4) is to "require[] plaintiffs . . . to eliminate th[e] inference of non-discrimination." *Id.* Danial has offered no evidence that gives rise to an inference of discrimination. Accordingly, no exception to the general rule that a plaintiff show he was replaced by someone outside his protected class applies here.
[18] In his deposition, Danial claims that "they force[d] [James] not to hire me. Because if she hire[d] me, the math department would look bad." (*Id.* at 138:7–9). However, Danial offers no evidence that James was pressured into her decision, which James states she made based solely on funding concerns, the fact that Danial was no longer an MSU employee in 2015, and her general opinion of Danial as a teacher. (James Aff. ¶ 5, ECF No 68-4).

12

2000e-3. As with claims for Title VII discrimination, a plaintiff lacking direct or circumstantial evidence of retaliation may prove his allegations using the *McDonnell Douglas* framework. *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015). To establish a prima facie case of retaliation, a plaintiff must demonstrate that: (1) he engaged in protected activity; (2) his employer took adverse employment action against him; and (3) a causal connection existed between the protected activity and the adverse action. *Id.* (internal citation omitted).

### A. *Part-time contractual faculty position in the Mathematics Department*

Danial claims that MSU retaliated against him when it failed to hire him for a part-time position in the Mathematics Department for the 2014–15 academic year. During the July 25, 2014, meeting in which Nkwanta informed Danial he would not receive a full-time contractual position for 2014–15, Danial claims that Nkwanta promised him he could teach part-time. According to Danial, Nkwanta's August 4 decision not to offer Danial a part-time position was in retaliation for Danial's July 29 meeting with Dean Kennedy, in which Danial alleged racial discrimination. Nkwanta denies that he promised Danial a part-time position, (Nkwanta Aff. ¶ 32, ECF No. 68-3), but admits that he knew about the discrimination claim before the August 4 meeting, (Nkwanta Memo., ECF No. 67-9).

It is undisputed that Danial's communications with Dean Kennedy about alleged racial discrimination constituted protected activity. MSU suggests, however, that Nkwanta's failure to offer Danial a part-time position does not constitute "adverse employment action" sufficient to satisfy element (2) of a prima facie case of retaliation, as "[Danial] has failed to establish that a part time position even existed[.]" (Def.'s Opp. & Cross Mot. at 29, ECF No. 68-1). According to the May 18, 2016, written finding of the MCCR,

> The investigation was unable to corroborate [Danial's] assertion that Dr. Nkwanta

13

told [Danial] that he could teach two (2) classes and only needed to appear on
August 4, 2014, to finalize the arrangement. The investigation determined that
during the meeting on July 25, 2014, [Danial] and Dr. Nkwanta discussed the
possibility of [Danial] teaching part time, but no formal arrangements were made.
During an investigatory interview, Dr. Nkwanta explained that he told [Danial] to
see him on August 4, 2014, at which point he would have a better idea of what part
time work, if any, was available. After the July 25, 2014, meeting, Dr. Nkwanta
determined that [Danial] "did not show strong enthusiasm to teach part-time" as
[Danial] ["]mentioned to me that he could make more money getting retirement
benefits and that he could find teaching jobs at other local universities." As a result,
Dr. Nkwanta did not offer [Danial] a part time position.

(Feb. 22, 2016, MCCR Written Finding at 8–9, ECF No. 68-22).[19] The MCCR thus concluded that Nkwanta's decision not to offer Danial a part-time teaching position was based on Danial's disinterest in the role. The MCCR's finding is supported by Danial's own statements during Nkwanta's deposition:

Why I should accept part-time position if I can make more money from my . . .
social security and retirement . . . You think I'm after part-time position? And
why after 20 year [sic], I should go down to part time after all these services? . . .
[W]hy I should go down from teaching four courses to going down to teach two
courses . . . Why would I do that?

(Nkwanta Depo. at 81:10–82:6, Def.'s Opp. & Cross Mot. Ex. 15, ECF No. 68-15).[20] Further, Danial stated in his Reply that "Chair Nkwanta . . . suggested a part time position and I said that I can make more money from my retirement check and social security[.]" (Pl.'s Reply & Opp. at 24, ECF No. 74). Danial also implied that his lawsuit against MSU was unrelated to any alleged offer for a part-time position, stating, "See I'm in this . . . for 4 years. I'm doing that for part-time

---

[19] The court is permitted to consider the findings of the MCCR, the state agency tasked with reviewing Danial's claims, as evidence under the public records exception to the rule against hearsay. *See* Fed. R. Evid. 803(8); *see also Blasic v. Chugach Support Servs., Inc.*, No. WDQ-04-4022, 2010 WL 3294353, at *4 (D. Md. Aug. 20, 2010) (finding EEOC determinations and records admissible under Rule 803(8)); *King v. N. Carolina Dep't of Pub. Safety*, No. 5:12-CV-152-F, 2014 WL 69601, at *4 (E.D.N.C. Jan. 8, 2014) (citing *Chandler v. Roudebush*, 425 U.S. 840, 863 n. 39 (1976) ("[I]t is well settled that a district court may find determinations made by the Equal Employment Opportunity Commission ('EEOC') admissible under Rule 803(8) as long as the circumstances do not indicate a lack of trustworthiness.")).

[20] The court acknowledges that Danial's statements during Nkwanta's deposition were unsworn. Nevertheless, the statements are offered by a party opponent, and the court can consider them as non-hearsay evidence. *See* Fed. R. Evid. 801(d)(2)(A).

14

position? No." (*Id.* at 82:8–8).

Adverse employment action is any action by an employer that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). The challenged action must be "*materially* advers[e]," not simply a "trivial harm[]." *Id.* (emphasis in original). The court cannot find that Nkwanta's failure to extend an offer of part-time employment to Danial—who, according to his own statements, would have rejected it—was a materially adverse action. Accordingly, Danial has failed to state a prima facie case of retaliation.[21]

### B. *Contractual positions for the 2015–16 and 2016–17 academic years*

Danial claims that MSU's failure to hire him for full-time contractual positions for the 2015–16 and 2016–17 academic years was in retaliation for his charge of racial discrimination. Danial, however, cannot establish a causal link between the failure to hire and the protected activity, and thus fails to state a prima facie case. Danial offers no evidence—other than his own belief—that MSU's decision not to hire him for the 2015–16 and 2016–17 academic years was connected to his discrimination claim. *See Mackey v. Shalala*, 360 F.3d 463, 469–70 (4th Cir. 2004) ("A plaintiff's own self-serving opinions, absent anything more, are insufficient to establish a prima facie case of discrimination."). Danial cannot rely on temporal proximity to establish a causal link, as he initiated his discrimination claim roughly seven months before he applied for a 2015–16 position,[22] and well over a year before he applied for a 2016–17 position. *See Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004) (abrogated on other grounds by

---

[21] MSU also claims that Danial cannot establish a causal link between Danial's allegation of discrimination and Nkwanta's decision not to offer him a part-time position. Given that Danial cannot establish material adversity, the court need not address whether there was a causal link.

[22] Danial states that he applied for a 2015–16 position in "late January" of 2015. (Compl. Ex. 1 at 1, ECF No. 1-3).

15

*Foster*, 787 F.3d at 299) ("[T]he passage of time . . . tends to negate the inference of discrimination");[23] *see also Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (3-month period insufficient to establish temporal proximity); *Hughes v. Derwinski*, 967 F.2d 1168, 1174–75 (7th Cir. 1992) (4-month period insufficient to establish temporal proximity)).

Even if Danial could state a prima facie case, he would be unable to disprove MSU's stated non-retaliatory reason for not offering him full-time contractual positions for the 2015–16 and 2016–17 academic years. Specifically, MSU contends that it failed to hire Danial on these occasions for the same reasons they failed to hire him for the 2014–15 academic year: lack of service and lack of collegiality. *See supra* Part I(A). Just as Danial is unable to show that MSU's proffered explanation is a pretext for discrimination, he likewise cannot show that it is a pretext for retaliation.

## C. *CASA Program*

Finally, Danial claims that MSU retaliated against him when it failed to hire him as a teacher for the CASA program for Summers 2015, 2016, and 2017. But these claims fail, as Danial is unable to establish a prima facie case of retaliation. With respect to the Summer 2015 CASA position, the evidence establishes that CASA Director James did not learn of Danial's

---

[23] The court acknowledges that the Fourth Circuit in *Price* found that the requirement of temporal proximity was satisfied by a period of nine to ten months between the protected activity and the adverse employment action. *Id.* This case, however, is distinguishable from *Price*. The *Price* court stated that "it [was] a very close question" whether the adverse action was close enough in time to the protected activity, but found for the plaintiff because "a reasonable trier of fact could conclude that . . . [the employer], at the first available opportunity, declined to hire [the plaintiff]" upon learning of the protected activity. *Price*, 380 F.3d at 213. Here, MSU first decided to stop offering full-time contractual positions to Danial on July 25, 2014, *before* he made any allegations of discrimination. This fact, combined with the lengthy period between Danial's complaint and MSU's decision not to hire him for the 2015–16 academic year, leads the court to believe *Price* does not compel a finding that Danial has established a prima facie case.

discrimination claim until after she decided not to extend him an offer.[24] (Feb. 22, 2016, MCCR Written Finding at 8, ECF No. 68-22). At minimum, for a causal connection to exist between a protected activity and an adverse employer action, the employer must know of the protected activity. *Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 901 (4th Cir. 2017) ("If an employer . . . never realized that its employee engaged in protected conduct, it stands to reason that the employer did not act out of a desire to retaliate for conduct of which the employer was not aware." (internal citation omitted)).

With respect to James's failure to hire Danial for Summers 2016 and 2017, Danial offers no evidence that CASA Director James's decision not to hire him was retaliatory,[25] and cannot rely on temporal proximity to establish a causal link between his complaint and the hiring decision. Danial applied for the positions in the spring of 2016 and the spring of 2017, each time well over a year after making his allegation. Danial thus fails to establish a prima facie case of retaliation for MSU's failure to hire him for the CASA program.

## CONCLUSION

For the foregoing reasons, the court will grant MSU's cross motion for summary judgment. The court will deny Danial's motion for summary judgment. A separate order follows.

_____  
11/15/19  
Date

_____  
CCB  
Catherine C. Blake  
United States District Judge

---

[24] Danial does not appear to contest the fact that James was the final decision-maker.
[25] Danial merely claims—without evidence or personal knowledge—that EEOO Director Barber told James about the complaint and pressured her not to hire him at CASA. James categorically denies this. (James Aff. ¶ 12, ECF No. 68-4 ("Tanyka Barber never advised me that Mr. Danial had filed a discrimination charge against the University and she never directed me not to hire Mr. Danial.")).

17