IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| EDWARD J. DANIAL | * | |
| | * | |
| v. | * | Civil Action No. CCB-17-959 |
| | * | |
| MORGAN STATE UNIVERSITY | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM

Now pending is Edward J. Danial's motion to reconsider summary judgments. (ECF 84). Morgan State University ("MSU") opposes the motion, (ECF 85), and Danial has replied (ECF 88). No hearing is necessary. For the reasons stated below, the court will deny the motion.

## BACKGROUND

The facts of this case are recounted more extensively in the court's November 15, 2019, memorandum. (ECF 79 at 1–5). Danial brought this suit against MSU, his former employer, alleging discrimination on the basis of race and retaliation in violation of Title VII of the Civil Rights Act of 1964. Danial, who identifies as Caucasian, was a contractual math professor at MSU, an historically African American institution, from 1994 to 2014. Each year, Danial entered into a one-year contract with MSU, with the understanding that MSU had no obligation to rehire him after the expiration of the contract. During this period, Danial also entered into several six-week contracts to teach at MSU's summer supplemental academic program, the Center for Academic Success and Achievement Academy (the "CASA program").

In 2013, MSU implemented a policy aimed at converting certain contractual faculty positions to tenure-track faculty positions. In Spring 2014, all contractual faculty were asked to submit a curriculum vitae ("CV") so they could be considered for tenure-track positions and future contractual positions. Following a review of candidates by MSU's Promotion and Tenure

1

Committee (the "P&T Committee"), Danial was not offered a tenure-track position, nor was he offered a contractual position for the 2014–15 academic year. According to P&T Committee members, Danial was ranked below other candidates in part because his CV did not reflect any recent service to the Mathematics Department, and he had not published a research paper since 1992. Danial and Asamoah Nkwanta, Chair of the Mathematics Department, discussed the possibility of part-time employment, but an offer never materialized.

On August 6, 2016, Danial submitted a discrimination claim to MSU's internal Equal Employment Opportunity Office ("EEOO") based on MSU's failure to offer him a contractual position. Several months later, Danial applied for a contract to teach in the CASA program for Summer 2015, for which he was rejected. For the next two years, Danial continued to apply for contractual positions in the Mathematics Department and in the CASA program, and he continued to be rejected.

In 2015, Danial filed discrimination claims with the Maryland Commission on Civil Rights ("MCCR") and the United States Equal Employment Opportunity Commission ("EEOC"), alleging racial discrimination and retaliation. The MCCR concluded there was no probable cause for discrimination or retaliation, and in January 2017, the EEOC issued right to sue letters. Danial filed this lawsuit in April 2017, alleging eight counts: "(1) Discrimination in Hiring; (2) Retaliation for Charging Discrimination; (3) Lack of Written Guidelines for Investigating Discrimination Claims; (4) Failure to Address a Discrimination Complaint; (5) Discrimination in Failing to Convert Him to Tenure Track; (6) Discrimination in Failing to Promote Him to Director of the Actuarial Science Program; (7) Breach of Contract For Failure to Pay an Amount of $5,600.00; and (8) Discrimination and Retaliation in Failing to Hire Him for

the CASA Program."[1] On July 27, 2018, the court granted summary judgment in MSU's favor on Counts 3, 4, and 7, and dismissed Counts 5 and 6 for failure to exhaust administrative remedies. (ECF 54, 55). On November 15, 2019, the court granted summary judgment in MSU's favor on the remaining claims (Counts 1, 2, and 8). (ECF 79, 80). On December 30, 2019, Danial filed a motion to reconsider the dispositions of all claims. (ECF 84).[2]

## STANDARD OF REVIEW

"[A] motion to reconsider may be construed as a motion to alter or amend judgment under Fed. R. Civ. P. 59(e), or a motion for relief from judgment under Fed. R. Civ. P. 60(b)." *Bank v. M/V "Mothership"*, 427 F. Supp. 3d 655, 658 (D. Md. 2019) (citing *MLC Auto., LLC v. Town of S. Pines*, 532 F.3d 269, 278–80 (4th Cir. 2008)). "The timing of the filing of the motion is the key factor in ascertaining which rule applies." *Id*. at 659. Motions to reconsider filed no later than 28 days after the entry of final judgment "should be analyzed only under Rule 59(e)." *Id*. While, in general, courts may extend the time to file pleadings where good cause is shown, a court may not extend the time to file a Rule 59(e) motion. Fed. R. Civ. P. 6(b)(2).

Danial's motion does not specify whether his motion is filed pursuant to Rule 59(e) or 60(b), but he states in his Reply that he intends his motion as one under Rule 59(e). (ECF 88 at 1). Nevertheless, the court must treat Danial's motion as one under Rule 60(b). The court granted summary judgment in favor of MSU on November 15, 2019, meaning Danial had until December 13, 2019, to file a Rule 59(e) motion. Danial did file a "motion for extension of time to file a motion to reconsider the summary judgment orders," but did not specify that he intended to file a motion pursuant to Rule 59(e), instead citing an inapplicable Federal Rule of Appellate

---

[1] In the court's July 27, 2018, Memorandum, the court noted that Danial agreed to this description of his claims. (ECF 54 at 6 & n.3).

[2] Danial requests reconsideration of the "summary judgments" on Counts 1–8. But, as noted, Counts 5 and 6 were dismissed for failure to exhaust administrative remedies.

3

Procedure.[3] (ECF 81). Although the court granted Danial's motion, (ECF 83), it did not have the authority to extend the Rule 59(e) deadline.

Motions filed pursuant to Rule 60(b) must be made "within a reasonable time." Fed. R. Civ. P. 60(c)(1). A district court may grant Rule 60(b) relief "for five enumerated reasons or for 'any other reason that justifies relief.'" *Aikens v. Ingram*, 652 F.3d 496, 500 (4th Cir. 2011) (quoting Fed. R. Civ. P. 60(b)(6)). The five enumerated reasons are: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; [and] (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable[.]" Fed. R. Civ. P. 60(b)(1)–(5). While the "catchall" provision of the Rule—"any other reason that justifies relief," Fed. R. Civ. P. 60(b)(6)— "includes few textual limitations, its context requires that it may be invoked in only 'extraordinary circumstances[.]'" *Aikens*, 652 F.3d at 500. Moreover, where Rule 60(b)(6) arguments "could have been addressed on appeal from the judgment," courts deny the motion "as merely an inappropriate substitute for an appeal." *Id.* at 501.

Although the court must construe Danial's motion as one under Rule 60(b), where, as here, "the Motion to Reconsider is little more than a rehashing of plaintiff's earlier arguments, which have already been considered and rejected by the Court," analysis under Rule 59(e) would be "largely the same." *See Mothership*, 427 F. Supp. 3d at 660.

---

[3] Danial, who has long proceeded in this case pro se, has a history of raising non-cognizable legal arguments to which the court cannot always respond.

4

**DISCUSSION**

Danial's motion for reconsideration does not assert any of the reasons for reconsideration enumerated in Rule 60(b). The court thus considers his arguments under the "catchall" provision. For the reasons explained below, Danial does not demonstrate any "extraordinary circumstances" necessary to prevail under this provision, nor does he raise any other compelling arguments for reconsideration.[4]

## 1. Discrimination in Hiring

The court granted summary judgment in favor of MSU on Count 1 (failure to hire Danial for contractual faculty positions for the 2014–15, 2015–16, and 2016–17 academic years) because Danial did not present direct or circumstantial evidence of discrimination, nor could he meet his burden under the *McDonnell Douglas* framework[5] of showing "*both* that [MSU's] reason [for not hiring him] was false, and that discrimination was the real reason." (ECF 79 at 8, 11 (quoting *Adams v. Trustees of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) (emphasis in original))). This remains true. In arguing for reconsideration of Count 1, Danial recites numerous facts he believes the court "overlooked" or misstated. (ECF 84 at 2–25). But Danial's re-hashing of all the evidence he believes supports his discrimination claim reveals that he misunderstands why the court granted summary judgment in MSU's favor. The court did not base its conclusion on a finding that Danial was unqualified for the job or that other

---

[4] The court notes that Danial's motion would fail under Rule 59(e) as well.

[5] Absent direct or circumstantial evidence of discrimination, a plaintiff may proceed under the burden-shifting framework first established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005). Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a prima facie case of racial discrimination. *McDonnell*, 411 U.S. at 802. To establish a prima facie case for discriminatory failure to hire, a plaintiff must show that: (1) he belonged to a protected class; (2) he applied for, and was qualified for, a job for which the employer was seeking applicants; (3) he was rejected despite his qualifications; and (4) after his rejection, the position remained open and the employer continued to seek similarly-qualified applicants, or filled the position with an applicant outside the protected class. *McDonnell*, 411 U.S. at 802; *E.E.O.C. v. Sears Roebuck & Co.*, 243 F.3d 846, 851 (4th Cir. 2001).

applicants were more qualified. Rather, the court found that Danial could not adequately rebut MSU's proffered non-discriminatory reason for the non-hire: lack of recent service and collegiality. (ECF 79 at 9). Danial's personal assessment of his collegiality, service, excellence in teaching, and his belief that he was superior to other applicants remain insufficient to show that MSU's reason was pretextual. Nor do any of the "clear errors of law" that Danial identifies actually constitute clear errors of law. For example, it was not a "clear error of law" for the court to consider an MSU professor's deposition when evaluating MSU's proffered non-discriminatory reason for not hiring him simply because Danial believes that the professor was lying. (*See* ECF 84 at 9). Crucially, Danial still fails to produce any evidence that anti-Caucasian bias was the real reason he was not hired. The court thus finds no compelling reason to reconsider its grant of summary judgment on this claim.[6]

## 2. Retaliation for Charging Discrimination

Danial alleged in the Complaint that MSU retaliated against him for filing a charge of discrimination by not hiring him for a part-time position. (ECF 1-3 at 10). The court granted summary judgment to MSU on this claim because Danial failed to show that "Nkwanta's failure to extend an offer of part-time employment to Danial—who, according to his own statements, would have rejected it—was a materially adverse action" within the meaning of Title VII retaliation. (ECF 79 at 14–15). Nothing in Danial's motion for reconsideration changes the court's conclusion. Indeed, Danial again suggests that even if the offer had been extended, he would have rejected it. (*See* ECF 84 at 27 ("[W]hy should he go down from teaching 4 courses to 2 courses, come down [h]is salary, demoted from lecturer to an instructor, be humiliated on campus after all these 20 years of unselfish service to Morgan?")).

---

[6] To the extent that Danial seeks to add an additional claim based on his non-hire for the 2019–20 academic year, (ECF 84 at 12), that request is inappropriate on a motion for reconsideration and will be denied.

Danial also claimed that MSU's failure to hire him for contractual positions for the 2015–16 and 2016–17 academic years was discriminatory.[7] The court granted summary judgment in favor of MSU on this claim because Danial could neither establish a causal link between his protected activity nor disprove MSU's stated non-retaliatory reason for not hiring him. (ECF 79 at 15–16). Nothing in Danial's motion for reconsideration cures these deficiencies, and the court will not reconsider its granting of summary judgment on this claim.

### 3. Lack of Written Guidelines for Investigating Discrimination Claims

As alleged in the Complaint, Count 3 consisted of the allegation that MSU had no written guidelines for handling discrimination complaints. (ECF 1-3 at 10–11). The court dismissed Count 3 based on Danial's own admissions that he found guidelines for handling discrimination complaints on MSU's website. (*See, e.g.*, ECF 42-1 (stating that he discovered "3-step guidelines on handling discrimination complaints" on MSU's website)). Danial's more recent characterization of the claim—that EEOO Director Tanyka Barber was unaware of the guidelines and/or that the guidelines should have appeared in the Faculty Handbook, (ECF 84 at 27)—was not properly presented to the court in an amended complaint. Even if it had been, as the court explained in the July 27, 2018, Memorandum, the failure to provide written guidelines is not an adverse employment action within the meaning of Title VII. (ECF 54 at 11). Danial's re-assertion of previously rejected arguments does not provide a basis for reconsideration.

### 4. Failure to Address a Discrimination Complaint

In Count 4, Danial claimed that "[f]ailing to give an explanation to a discrimination claim is a discrimination act by itself." (ECF 1-3 at 13). As the court explained in the July 27, 2018, Memorandum, however, "an employer's failure to investigate a complaint of discrimination is

---

[7] To the extent that Danial seeks to add additional claims based on instances of non-hiring after 2017, that request is denied. *See supra* note 6.

7

generally not considered a materially adverse action" within the meaning of Title VII. (ECF 54 at 10 (citing *Mason v. Montgomery County Police Dept.*, 2013 WL 6585928, *5 (D. Md. Dec. 13, 2013) (further citations omitted)). In his motion for reconsideration, Danial suggests that because his claim relates to a failure to hire, rather than termination, he need not show an adverse employment action. (ECF 84 at 29–30). Not so. "It is well established that Title VII's protections extend only to adverse employment actions." *Chika v. Planning Research Corp.*, 179 F. Supp. 2d 575, 584 (D. Md. 2002) (citing *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985)). Adverse employment actions include, "ultimate employment decisions such as hiring, granting leave, discharging, promoting and compensation." *Id.* (quoting *Page v. Bolger*, 645 F.2d 227, 233 (4th Cir. 1981)). While that list is non-exhaustive, "not everything that makes an employee unhappy is an actionable adverse action." *Id.* at 585 (citation and quotation marks omitted). Regardless of whether the backdrop of this failure to investigate claim was a failure to hire or a termination, Danial needed to show that the alleged failure to investigate was itself an adverse action in order to make this claim independently cognizable.[8] As he did not, the court did not err in granting summary judgment to MSU on this claim.

**5. Discrimination in Failing to Convert Him to Tenure Track**

The court dismissed Count 5 for failure to exhaust administrative remedies. A plaintiff's right to bring suit under Title VII is limited by the charge of discrimination he filed with the EEOC. *See Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 132 (4th Cir. 2002).[9] As the

---

[8] The failure to hire claim has been addressed separately in section 1, above.

[9] In the July 27, 2018, Memorandum, the court stated that "[m]otions to dismiss for failure to exhaust administrative remedies are governed by Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction." (ECF 54 at 11–12 (quoting *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003))). The court found that Danial failed to exhaust administrative remedies as to claims 5 and 6 and dismissed them accordingly. In 2019, however, the Supreme Court held that Title VII's charge filing requirement was "not of jurisdictional cast," but rather "speak[s] to . . . a party's procedural obligations." *Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1850–51 (2019) (citation and quotation marks omitted). "In so ruling, the Court abrogated the prior holding of the United States Court of Appeals for the Fourth Circuit that Title VII's exhaustion requirement relating to the content of an EEOC charge was

allegations of Count 5 were not within the scope of his MCCR complaints, the court found that Danial had failed to exhaust administrative remedies. (ECF 54 at 13). Danial argues that the omission of this claim from the MCCR charges was an error on MCCR's part, as evidenced by email communications with the MCCR Field Supervisor. (ECF 84 at 29). But, as the court previously explained, "[p]rivate letters and other communications to investigators are not viewed as constructively amending the formal charges, as doing so would fail to 'put the charged party on notice of the claims raised against it.'" (ECF 54 at 12 (quoting *Balas v. Huntington Ingalls Industries, Inc.*, 711 F.3d 401, 408 (4th Cir. 2013) (further citation omitted))). As Danial cannot show that Count 5 falls within the scope of the MCCR charges, the court correctly dismissed the claim.

**6.  Discrimination in Failing to Promote Him to Director of the Actuarial Science Program**

The court dismissed Count 6 for failure to exhaust administrative remedies for the same reason it dismissed Count 5. (ECF 54 at 11–14). Because Danial cannot show that Count 6 was within the scope of the MCCR charges, the court did not err in dismissing the claim.

**7.  Breach of Contract For Failure to Pay an Amount of $5,600.00**

In Count 7, Danial alleged that he was owed $5,600 for teaching overload courses. (ECF 1-3 at 14–15). As the court explained in the July 27, 2018, Memorandum, to the extent that this claim was a breach of contract claim, MSU was entitled to sovereign immunity,[10] and Danial's claim did not fall into the limited sovereign immunity waiver for contract actions. (ECF 54 at 14–15). The motion for reconsideration does not address sovereign immunity; rather, Danial

---

jurisdictional." *Hodge v. Walrus Oyster Ale House*, No. CV TDC-18-3845, 2019 WL 6069114, at *3 (D. Md. Nov. 15, 2019) (citing *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300-01 (4th Cir. 2009)). *Davis*, however, does not change the fate of Danial's claims. "[A] rule may be mandatory without being jurisdictional," *Davis*, 139 S. Ct. at 1852, and because Danial failed to exhaust administrative remedies, these claims are properly dismissed under Rule 12(b)(6).

[10] MSU is an "independent unit of State government." Md. Code Ann. Educ. § 14-101(a)(3).

simply reiterates why he believes he is owed $5,600. (ECF 84 at 31–32). Danial thus presents no grounds for the court to reconsider its conclusion that MSU was entitled to sovereign immunity on the breach of contract claim.[11]

## 8. Discrimination and Retaliation in Failing to Hire Him for the CASA Program

In Count 8, Danial's claimed that CASA's failure to hire him was retaliatory. The court granted summary judgment in MSU's favor because Danial could not show a causal connection between his protected activity and the non-hire. (ECF 79 at 16–17). He still cannot. He merely states that the CASA Director's choice to re-hire African American teachers, but not hire Danial, demonstrates "discrimination via [] circumstantial evidence." (ECF 84 at 32). Not so. Moreover, as the court explained in the November 15, 2019, Memorandum, Danial's argument that the CASA Director has failed to hire him "under duress" is unsupported—and, indeed, rebutted by the Director's own affidavit—and unpersuasive. (ECF 79 at 17 n.25). The court will not reconsider its decision to grant summary judgment in MSU's favor on this claim.

### CONCLUSION

For the reasons stated above, the court will deny Danial's motion for reconsideration. A separate order follows.

| | |
|---|---|
| 7/16/20 | /S/ |
| Date | Catherine C. Blake |
| | United States District Judge |

---

[11] To the extent that the claim was intended as a Title VII discrimination claim, it was not within the scope of the MCCR changes and was dismissed on that ground. (ECF 54 at 15).